IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. CHRISTOPHER KNIGHTON**

**Direct Appeal from the Circuit Court for Blount County**
**No. C-10633-35    D. Kelly Thomas , Judge**

---

**No. E1999-01788-CCA-R3-CD - Decided**
**May 26, 2000**

---

Defendant Christopher Knighton pled guilty to Class B felony delivery of cocaine, Class C felony delivery of cocaine, and Class E felony delivery of a counterfeit controlled substance. Defendant received concurrent sentences of eight years, three years, and one year, with the sentences to be served in the Community Corrections Program. The trial court subsequently revoked Defendant's Community Corrections sentence and ordered Defendant to serve his sentence in the Tennessee Department of Correction. Defendant challenges the revocation of his Community Corrections sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WOODALL, J. delivered the opinion of the court, in which TIPTON, J. and WITT, J. joined.

Jon A. Anderson, Maryville, Tennessee, for the appellant, Christopher Knighton.

Paul G. Summers, Attorney General and Reporter, Mark A. Fulks, Assistant Attorney General, Michael L. Flynn, District Attorney General, and Tammy Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

On November 6, 1997, Defendant pled guilty to Class B felony delivery of cocaine, Class C felony delivery of cocaine, and Class E felony delivery of a counterfeit controlled substance. On November 13, 1997, Defendant received an effective sentence of eight years to be served in the Community Corrections Program.

On June 12, 1998, a warrant was issued which alleged that Defendant had violated the terms of his Community Corrections sentence by failing to pay court costs, failing to perform community service, failing to provide wage verification, and for involvement in a rape case. On November 2, 1998, Defendant stipulated that he had violated the terms of his Community Corrections sentence. As a result of the violation, the trial court ordered Defendant to serve six months in jail, to be

followed by residence in a halfway house until he received further instructions from his probation officer.

On March 16, 1999, a warrant was issued which alleged that Defendant had violated the terms of his Community Corrections sentence by failing to reside at the halfway house in accordance with the rules and restrictions. The trial court conducted a revocation hearing on June 28, 1999.

During the revocation hearing, Pat Ballard testified that she was the probation officer assigned to handle Defendant's sentence in the ETHRA Community Corrections Program. Ballard filed the first warrant that resulted in Defendant's incarceration for six months in the Blount County Jail. When Defendant was released from jail, he failed to report to Ballard as required by court order and instead, he moved to Knoxville to live with his girlfriend. When Ballard received notification of Defendant's release approximately five days later, Ballard contacted a Knoxville halfway house and was able to get Defendant accepted at the halfway house as a personal favor.

Ballard testified that after entering the halfway house, Defendant did not participate in the halfway house socialization program and Defendant also violated his curfew on March 10 and 11, 1999. After experiencing these difficulties with Defendant, the treatment coordinator for the halfway house asked for a revocation warrant, but Ballard suggested that they try a thirty-day house restriction.

Ballard testified that when Defendant was informed of the thirty-day house restriction on March 11, 1999, he shouted profanities, said that he wouldn't do it, and walked out. No contact was made with Defendant until after his arrest on May 22, 1999.

Defendant testified that he reported to the halfway house voluntarily and he "pretty much followed the routine of the program there" for a number of days. However, Defendant testified that he eventually experienced difficulties with the other residents of the halfway house. Defendant testified that when he reported these problems, it only made things worse.

Defendant testified that when his probation officer found out that he had charges for rape and robbery pending against him, she made up her mind to violate him no matter what he did. In addition, Defendant denied that he was ever informed about the thirty-day house restriction.

On cross-examination, Defendant admitted that after he was released from jail, he went to live with his girlfriend and he did not contact his probation officer even though he knew it was his responsibility to do so. Defendant also admitted that he left the halfway house for good on March 12, 1999, and went to his girlfriend's residence. Defendant stated that he left the halfway house because, although he was not sure that a violation warrant had been issued for him, he had been told that a warrant had been issued. Defendant stated that he did not contact his Knoxville probation officer to determine whether a warrant had actually been issued because they had a "conflict of interest" and he did not "need her." Defendant claimed that he did not call Ballard because of the way she had treated him when she found out about the pending rape charge. Defendant testified that

he stayed at his girlfriend's residence from the time that he left the halfway house on March 12, 1999, until he was arrested on May 22, 1999.

At the conclusion of the hearing, the trial court found that Defendant had violated the conditions of his Community Corrections sentence by failing to report to Ballard upon his release from jail, violating his curfew on two occasions, and eventually walking away from the halfway house and moving back in with his girlfriend.

## ANALYSIS

Defendant contends that the trial court erred when it revoked his Community Corrections sentence and ordered him to serve his sentence in the Tennessee Department of Correction. We disagree.

Initially, we note that Defendant has failed to cite even one authority in support of his argument and thus, this issue is waived. See Tenn. Ct. Crim. App. R. 10(b). Notwithstanding waiver, Defendant is not entitled to relief on the merits.

The decision to revoke a Community Corrections sentence rests within the sound discretion of the trial court and that decision will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation had occurred. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The proof of a violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Id. In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. See State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If the evidence is sufficient, the trial court, may, pursuant to its discretionary authority, revoke the Community Corrections sentence and require the defendant to serve the sentence in confinement. See Tenn. Code Ann. § 40-36-106(e)(3) (Supp. 1999).

The record in this case contains substantial evidence that Defendant violated the conditions of his Community Corrections sentence. When Defendant was released from serving his six month sentence in jail, he was ordered to live in a halfway house until he received other instructions from Ballard. Defendant admitted that on March 12, 1999, he left the halfway house and moved in with his girlfriend, where he stayed until he was arrested approximately two months later. Defendant admitted that when he left the halfway house, he did not contact his Knoxville probation officer. Defendant also admitted that he failed to contact Ballard when he left the halfway house.

Defendant argues that the trial court should not have revoked his Community Corrections sentence because the evidence shows that Ballard was biased against him and her testimony at the revocation hearing was contradictory. Defendant also maintains that his failure in the Community Corrections Program was essentially guaranteed by the incompetence of the program's administrators. However, "factual questions that involve assessing the credibility of witnesses, or the weight and value to be given their testimony, are matters for resolution by the trial court." State

v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court obviously found that Ballard's testimony about Defendant's violation was credible and found that Defendant's violation was his own fault rather that the fault of the program's administrators.

In this case, there is absolutely no question that Defendant violated the requirements of the Community Corrections Program. This violation, together with his previous violation, indicates that he is either unable or unwilling to comply with the requirements of the program. Under these circumstances, the trial court was clearly justified in revoking Defendant's placement in the Community Corrections Program. Accordingly, the judgment of the trial court is AFFIRMED.